1   Jan Van Dusen, SBN 142700
    Self-Represented
2   Law Office of Jan Van Dusen
    3674 Mt. Diablo Blvd.
3   Lafayette, CA 94549
    Tel    510-689-6541
4   Fax    501-788-6210

5   Plaintiff, Self-Represented

6

7

8                   UNITED STATES DISTRICT COURT          **LB**

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          OAKLAND DIVISION

11                                    **CV 13 5023**

12  JAN VAN DUSEN,                         Case No.

13          Plaintiff,                     COMPLAINT FOR DAMAGES
                                           [42 U.S.C. § 1983; Pendent Claims]
14
    v.                                     REQUEST FOR JURY TRIAL
15
    CITY OF OAKLAND, a municipal corporation;
16  SERGEANT KYLE THOMAS, individually and
    in his capacity as a police officer for the City of
17  Oakland; SERGEANT MICHAEL VALLADON,
    individually and in his capacity as police officer
18  for the City of Oakland; CAPTAIN ERSIE
    JOYNER, individually and in his capacity as a
19  police supervisor for the City of Oakland; MY
    NGUYEN, individually and in his capacity as
20  police officer for the City of Oakland;
    SERGEANT HOFFMAN, individually and in his
21  capacity as police officer for the City of Oakland;
    LIEUTENANT BABKA, individually and as
22  police officer for the City of Oakland; HOWARD
    JORDAN, individually and in his capacity as
23  Acting Chief of Police for the City of Oakland;
    MEGAN WEBB, individually and in her capacity
24  as Director of Oakland Animal Services for the
    City of Oakland; SERGEANT DAVE CRONIN,
25  individually and in his capacity as police officer
    assigned to Oakland Animal Services; LORENA
26  ARREOLA, individually and in her capacity as
    animal control officer for the City of Oakland;
27  MARTHA CLINE, individually and in her
    capacity as Oakland Animal Services employee for
28  the City of Oakland; JACKIE PAN, individually
    and in his/her capacity as animal control officer for

                              1

1  the City of Oakland; LEO AYALA, individually
   and in his capacity as animal control officer for the
2  City of Oakland; PAULA PEREIRA, individually
   and in his/her capacity as an animal control officer
3  for the City of Oakland; K. POTTER, individually
   and in his/her capacity as a technician for the City
4  of Oakland; TANYA STRONG, individually and
   in her capacity as animal control officer for the
5  City of Oakland; N. LEWIS, individually and in
   her capacity as animal control officer for the City
6  of Oakland; SERGEANT SARAH WHITMEYER,
   individually and in her capacity as Oakland
7  Animal Services supervisor for the City of
   Oakland; JYOTHI ROBERTSON, DVM,
8  individually and in her capacities as veterinarian
   and veterinarian supervisor for the City of
9  Oakland; MAURICO SOTO, individually and in
   her capacity as veterinarian for the City of
10 Oakland; SARAH ANDRE, individually and in
   her capacity as veterinarian for the City of
11 Oakland; JENNIFER WOOLF, individually and in
   her capacity as veterinarian for the City of
12 Oakland; SHEA COX, individually and in her
   capacity as veterinarian for the City of Oakland;
13 CARL SINGER, individually and in his capacity
   as veterinarian for the City of Oakland; ROCIO
14 FIERO, individually and in her capacity as an
   attorney for the City of Oakland; LINDA
15 MOROZ, individually and in her capacity as an
   attorney for the City of Oakland; RANDOLPH
16 HALL, individually and in his capacity as an
   attorney for the City of Oakland; BARBARA
17 PARKER, individually and in her capacity as City
   Attorney for the City of Oakland; EAST BAY
18 SPCA, a nonprofit corporation duly organized
   under the laws of the State of California; JAMES
19 HUMPHREY, individually and in his capacity as
   an employee of East Bay SPCA; ENA FISHER,
20 individually and in his/her capacity as an employee
   of East Bay SPCA; G. FISHER, individually and
21 in his/her capacity as an employee of East Bay
   SPCA; JOSEPH ROMERO, individually and in
22 his capacity as an employee of East Bay SPCA;
   LAURA JAMISON, individually and in her
23 capacity as an employee of East Bay SPCA; L.
   JOHNSON, individually and in his/her capacity as
24 an employee of East Bay SPCA; COUNTY OF
   ALAMEDA, a legal subdivision of the State of
25 California; KATHLEEN FAMULENER,
   individually and in her capacity as an attorney for
26 the County of Alameda; NANCY O'MALLEY,
   individually and in her capacity as District
27 Attorney for the County of Alameda; ISLAND
   CAT RESOURCES AND ADOPTIONS, a
28 nonprofit corporation duly organized under the

2

1 | laws of the State of California; MERRY BATES, individually and as officer or director of Island Cat
2 | Resources and Adoptions, a nonprofit corporation duly organized under the laws of the State of
3 | California; FIX OUR FERALS, a nonprofit corporation duly organized under the laws of the
4 | State of California; DAIRNE RYAN, individually and in her capacity as an officer or director of Fix
5 | Our Ferals, a nonprofit corporation duly organized under the laws of the State of California; LINDA
6 | McCORMICK, individually and in her capacity as an officer or director and co-founder of Fix Our
7 | Ferals, a nonprofit corporation duly organized under the laws of the State of California; ELLEN
8 | LYNCH, individually and as a representative of Fix Our Ferals, a nonprofit corporations duly
9 | organized under the laws of the State of California; BRIGHTHAVEN, INC., a nonprofit corporation
10 | duly organized under the laws of the State of California, SUSAN HOFFMAN, individually and
11 | as a representative of Brighthaven, Inc., a nonprofit corporation duly organized under the
12 | laws of the State of California, and a representative of Fix Our Ferals, a nonprofit corporation duly
13 | organized under the laws of the State of California; DACIA PETERSEN, individually and as a
14 | representative of Brighthaven, Inc., a nonprofit corporation duly organized under the laws of the
15 | State of California, and a representative of Fix Our Ferals, a nonprofit corporation duly organized
16 | under the laws of the State of California;
17 | HUMANE SOCIETY OF THE UNITED STATES (HSUS), a nonprofit corporation duly organized
18 | under the laws of the District of Columbia; ADAM PARASCANDOLA, individually and in this
19 | capacity as an employee of HSUS; JAMES FOLEY, individually; and DOES 1 to 500,
20 | inclusive.

21 |     Defendants.

22

23 | <div align="center">JURISDICTION</div>

24 |    1.    This action arises under 42 U.S.C. § 1983. Jurisdiction is based on 28 U.S.C §§

25 | 1331 and 1343. Plaintiff also seeks declaratory relief under the Declaratory Judgment Act, 28

26 | U.S.C. §§ 2201 and 2202. The court has supplemental jurisdiction over the state claims under

27 | 28 U.S.C. § 1367.

28

INTRADISTRICT ASSIGNMENT

2. The claims alleged herein arose in the City of Oakland, State of California. Therefore, venue and assignment lies in the United States District Court for the Northern District of California, San Francisco Division. 28 U.S.C. § 1391(b)(2).

PARTIES

3. Plaintiff, Jan Van Dusen is a female citizen of the United States.

4. Defendant CITY OF OAKLAND is, and at all times herein mentioned was, a municipal corporation duly organized and existing under the laws of the State of California.

5. Defendant SERGEANT KYLE THOMAS was, at all times herein mentioned, a police officer for the City of Oakland.

6. Defendant SERGEANT MICHAEL VALLADON is, and at all times herein mentioned was, a police officer for the City of Oakland.

7. Defendant LIEUTENANT WILEY is, and at all times herein mentioned was, a police officer for the City of Oakland.

8. MY NGUYEN is, and at all times herein mentioned was, a police officer for the City of Oakland.

9. LT. BABKA is, and at all times herein mentioned was, a police officer for the City of Oakland.

10. SERGEANT HOFFMAN is, and at all times herein mentioned was, a police officer for the City of Oakland.

11. Defendant CAPTAIN ERSIE JOYNER is, and at all times herein mentioned was, a police supervisor for the City of Oakland.

12. Defendant MEGAN WEBB was, at all times herein mentioned, the Director of Oakland Animal Services for the City of Oakland.

13. Defendant LORENA AREOLA was, at all times herein mentioned, an Animal Control Officer for the City of Oakland.

14. Defendant TANYA STRONG was, at all times herein mentioned, an Animal Control Officer for the City of Oakland.

4

15.     Defendant TANYA STRONG was, at all times herein mentioned, an Animal Control Officer for the City of Oakland.

16.     Defendant DAVE CRONIN was, at all times herein mentioned, a police officer for the City of Oakland.

17.     Defendant HOWARD JORDAN was, at all times herein mentioned, the Chief of Police for the City of Oakland Police Department.  He is sued individually and in his capacity as Chief of Police for the City of Oakland.

18.     Defendant LINDA MOROZ is, and at all times herein mentioned was, an attorney for the City of Oakland.

19.     Defendant RANDOLPH HALL is, and at all times herein mentioned was, an attorney for the City of Oakland.

20.     Defendant ROCIO FIERO is, and at all times herein mentioned was, an attorney for the City of Oakland.

21.     Defendant BARBARA PARKER, is, and at all times herein mention was, City Attorney for the City of Oakland.

22.     Defendant COUNTY OF ALAMEDA is, and at all times herein mentioned was, a legal subdivision of the State of California, county corporation duly organized and existing under the laws of the State of California.

23.     Defendant KATHLEEN FAMULINER is, and at all times herein mentioned was, an attorney for the County of Alameda.

24.     Defendant NANCY O'MALLEY is, and at all times herein mentioned was, the District Attorney for the County of Alameda.

25.     ISLAND CAT RESOURCES AND ADOPTIONS, or ICRA, was, at all times herein mentioned, purportedly a nonprofit corporation duly organized and existing under the laws of the State of California.

26.     Defendant MERRY BATES was, at all times herein mentioned, an officer or director of Island Cat Resources and Adoptions, purportedly a nonprofit corporation duly organized and existing under the laws of the State of California.

1   27.   Defendant FIX OUR FERALS is, and at all times herein mentioned was, a

2   nonprofit corporation duly organized and existing under the laws of the State of California.

3   28.   Defendant DAIRNE RYAN is and at all times herein mentioned was, an officer

4   or director of Fix Our Ferals, a nonprofit corporation duly organized and existing under the

5   laws of the State of California.

6   29.   Defendant LINDA McCORMICK is, and at all times herein mentioned was, an

7   officer or director of Fix Our Ferals, a nonprofit corporation duly organized and existing under

8   the laws of the State of California.

9   30.   Defendant ELLEN LYNCH is, and at all times herein mentioned was, a

10   representative of Fix Our Ferals, a nonprofit corporation duly organized and existing under the

11   laws of the State of California.

12   31.   Defendant BRIGHTHAVEN, INC., is, and at all times herein mentioned was, a

13   nonprofit corporation duly organized and existing under the laws of the State of California.

14   32.   Defendant SUSAN HOFFMAN is, and at all times herein mentioned was, a

15   representative of Brighthaven, Inc., a nonprofit corporation duly organized and existing under

16   the laws of the State of California, and a representative of Fix Our Ferals, a nonprofit

17   corporation duly organized and existing under the laws of the State of California.

18   33.   Defendant DACIA PETERSEN was, at all times herein mentioned, a

19   representative of Brighthaven, Inc., a nonprofit corporation duly organized and existing under

20   the laws of the State of California, and a representative of Fix Our Ferals, a nonprofit

21   corporation duly organized and existing under the laws of the State of California.

22   34.   Defendant JAMES FOLEY is an individual.

23   35.   Plaintiff is ignorant of the true names and/or capacities of defendants sued

24   herein as DOES 1 through 500, inclusive, and therefore sues said defendants by such fictitious

25   names. Plaintiff will amend this complaint to allege their true names and capacities when

26   ascertained. Plaintiff is informed and believes, and upon such information and belief alleges,

27   that each of the Doe defendants is legally responsible and liable for the incident, injuries and

28   damages hereinafter set forth, and that each of said defendants proximately caused said

6

1   incidents, injuries and damages by reason of their negligence, breach of duty, negligent

2   supervision, management or control, battery, violation of constitutional rights, violation of

3   public policy, or by reason of other personal, vicarious or imputed negligence, fault, or breach

4   of duty, whether severally or jointly, or whether based upon agency, employment, ownership,

5   entrustment, custody, care or control of upon any other act or omission. Plaintiff will ask leave

6   to amend this complaint to insert further charging allegations when such facts are ascertained.

7       36.     In doing the acts alleged herein, the Defendants alleged to be employed by the

8   City of Oakland, and each of them, acted within the course and scope of their employment for

9   the City of Oakland.

10      37.     In doing the acts and/or omissions alleged herein, Defendants, and each of them,

11  acted under color of authority and/or under color of law.

12      38.     In doing the acts and/or omissions alleged herein, Defendants, and each of them,

13  acted as agent, servant, employee and/or in concert with each of said other Defendants herein.

14                              STATEMENT OF FACTS

15      39.     Plaintiff ran a foster home for rescued cats in the City of Oakland for several

16  years. When space became available in local private, no-kill shelters, cats from Plaintiff's

17  foster home were taken to these shelters for adoption into homes. Cats sent for adoption

18  included tame cats that had once been feral. With the downturn in the national and local

19  economy, adoptions slowed dramatically. Few if any cats from Plaintiff's home were able to

20  find space in these no-kill shelters and go on to permanent homes.

21      40.     In March 2010, Plaintiff asked for Defendant SUSAN HOFFMAN

22  ("HOFFMAN") to help Plaintiff get cats adopted, as she had gotten a foreclosure notice after a

23  client had refused to pay a very large bill and had blocked payment from the opposing party.

24  Plaintiff sought to reduce expenses and spend less time on cat rescue so that she could save her

25  house. Prior to this time, Defendant HOFFMAN had repeatedly promised adoption assistance,

26  in return for Plaintiff agreeing to take cats from her and others, but had not followed through.

27  Defendant HOFFMAN agreed to help get Plaintiff's tame cats adopted.

28

7

41.    Instead of helping Plaintiff get cats adopted so that she could save her house, Plaintiff is informed and believes, and thereon alleges, that Defendants HOFFMAN and PETERSEN began a campaign to seize Plaintiff's cats.

42.    Plaintiff is informed and believes and thereon alleges that in approximately March 2010 Defendants MERRY BATES ("BATES"), DAIRNE RYAN ("RYAN"), LINDA McCORMICK ("McCORMICK"), HOFFMAN, PETERSEN, ELLEN LYNCH ("LYNCH") and DOES 1-500 began communicating with each other and with Defendant MEGAN WEBB ("WEBB"), asking WEBB to seize Plaintiff's animals. Defendants, and each of them, knew that there was no legal basis to seize Plaintiff's animals when they began this campaign. Defendants kept these communications secret from Plaintiff.

43.    Plaintiff is informed and believes, and thereon alleges, that Defendant WEBB sought to curry favor with Defendants BATES, RYAN, McCORMICK, HOFFMAN, PETERSEN, LYNCH, and DOES 1-500 due to their affiliation with well-funded nonprofits.

44.    Defendants RYAN and LYNCH had never been to Plaintiff's home or yard. Defendant BATES had been to Plaintiff's yard, briefly, *years* earlier, but had never been to Plaintiff's home. Defendant HOFFMAN had been to Plaintiff's home on many occasions without incident. Defendant PETERSEN had been to Plaintiff's home on one or two occasions before March 2010 without incident.

45.    Plaintiff is informed and believes and thereon alleges that Defendant PETERSEN, who appears to have initiated the campaign against Plaintiff, is no longer in contact with any of the other Defendants, including especially Defendants FIX OUR FERALS and BRIGHTHAVEN, INC.

46.    Plaintiff is informed and believes, and thereon alleges, that Defendants WEBB, BATES, RYAN, McCORMICK, HOFFMAN, PETERSEN, LYNCH and DOES 1 to 500 continued to plan the seizure of Plaintiff's animals for many months. During all of this time, Defendants knew there was no legal justification for seizing Plaintiff's animals and knew she was not in violation of any law.

8

47. Plaintiff is informed and believes and thereon alleges that Defendants WEBB, BATES, RYAN, McCORMICK, LYNCH, HOFFMAN, PETERSEN, and DOES 1 to 500 planned to charge Plaintiff with a felony so that she could not have animals. Defendants, and each of them, knew that there was no legal basis to charge Plaintiff with any crime when they made these plans.

48. In March 2010 Defendant LYNCH advised Plaintiff to contact WEBB and arrange for Oakland Animal Services to adopt out her cats that were ready for adoption. Plaintiff did so and was immediately offered adoption assistance.

49. Defendants WEBB, CLINE, STRONG, other Oakland Animal Services ("OAS") personnel and DOES 1-500 came to Plaintiff's home and picked up cats for adoption in a series of visits beginning in March 2010.

50. Although Plaintiff had initiated contact with OAS for the purpose of getting tame cats adopted into permanent homes, Plaintiff is informed and believe and thereon alleges that WEBB immediately began falsely stating to others that OAS had initiated the series of "inspections," either stating or implying that the inspections were enforcement actions. Plaintiff was unaware of this defamation.

51. WEBB demanded to be allowed to "inspect" Plaintiff's home in return for taking cats for adoption. Plaintiff is informed and believes that WEBB had no such arrangement with LYNCH or with any other rescuer. WEBB knew at the time that she had no legal right to demand inspections of Plaintiff's home.

52. After Plaintiff's cats had been adopted and none were under WEBB's control, Plaintiff terminated OAS inspections. Plaintiff is informed and believe and thereon alleges that this enraged Defendant WEBB, who regularly harassed Plaintiff by telephoning and demanding to inspect Plaintiff's home and routinely threatened to obtain a search warrant for the next 12 to 15 months until she finally obtained a warrant by misleading the magistrate and illegally seized Plaintiff's animals. WEBB knew each time she demanded an inspection and threatened to get a search warrant, that she had no legal grounds for obtaining a search warrant.

1    53.    WEBB also instructed Plaintiff in the management of Plaintiff's foster home.
2    Plaintiff is informed and believes and thereon alleges that WEBB had no experience or training
3    in the care and treatment of feral cats, or in managing a large-scale foster home of mostly feral
4    cats, when she began dictating to Plaintiff. At that time Plaintiff had more than 10 years'
5    experience in caring for and taming feral cats and managing a large-scale foster home for tame
6    and feral cats.

7    54.    Plaintiff is informed and believes and thereon alleges that WEBB contacted
8    others in approximately March or April of 2010 to attempt to adopt out Plaintiff's pet dog
9    without Plaintiff's consent. Plaintiff had no intention of adopting out her dog or any of her pets
10   and had not asked WEBB for this "assistance." Plaintiff refused to give up her dog.

11   7.    Plaintiff is informed and believes and thereon alleges that WEBB continued to
12   communicate surreptitiously with defendants BATES, RYAN, LYNCH, HOFFMAN, DOES 1-
13   500 and others regarding Plaintiff, from March 2010 and for the following three years, and
14   continued to defame Plaintiff to others, all without Plaintiff's knowledge. By incorporating
15   these women into her planning, Webb gained the support of several influential rescue
16   organizations, which benefitted her career.

17   55.    In December 2010, one of Plaintiff's cats was returned to OAS, WEBB refused
18   to return the cat to Plaintiff and threatened to kill it instead. The cat was removed from OAS
19   through a rescue "pull," at Plaintiff's request, and placed privately for adoption.

20   56.    Defendant WEBB continued to contact Plaintiff until October 2011, demanding
21   inspections and claiming that she was receiving complaints "from the rescue community."
22   WEBB knew when she made these threats that they were false. WEBB knew that her
23   continuing campaign against Plaintiff was based on rumor and innuendo, from people who
24   either had *no* knowledge of Plaintiff's home and animals or who had no current knowledge of
25   Plaintiff's home and animals.

26   57.    In June 2011, Plaintiff was informed that she had won an important case against
27   the Internal Revenue Service, litigated in the fall of 2009. This landmark case established that
28   expenses associated with animal rescue and fostering were deductible as charitable donations,

1 and suggested how to compute those expenses. Plaintiff's tax court victory received
2 nationwide publicity, including articles in the *Wall Street Journal, Forbes,* and other
3 publications, including those aimed at tax professionals and those aimed at animal rescuers and
4 others engaged in similar charitable endeavors.

5     58.    Plaintiff is informed and believes and thereon alleges that Defendants WEBB
6 and JYOTHI ROBERTSON immediately recognized an opportunity to leverage their own
7 careers using the publicity surrounding Plaintiff's tax court win, reasoning that their seizure of
8 Plaintiff's animals would instantly achieve the nationwide publicity because of Plaintiff's tax
9 court win. In less than six months, Defendant WEBB had engineered the seizure of Plaintiff's
10 animals.

11     59.    Plaintiff is informed and believes that in Defendant WEBB has relocated to
12 Virginia, near the District of Columbia headquarters of the HUMANE SOCIETY OF THE
13 UNITED STATES ("HSUS"), reportedly the wealthiest animal charity in the United States,
14 with 2012 annual income of $174,231,820. Plaintiff is informed and believes and thereon
15 alleges that Defendant WEBB career move was at least partly enabled by her seizure of
16 Plaintiff's animals.

17     60.    Plaintiff is informed and believes that Defendant WEBB's immediate
18 predecessor at OAS, Defendant ADAM PARASCANDOLA, works for HSUS. Defendant
19 WEBB was volunteer coordinator at OAS while Defendant PARASCANDOLA spent six
20 months as director of OAS.

21     61.    Plaintiff is informed and believes that Defendant ROBERTSON quit her job at
22 OAS and currently travels and gives seminars for the HUMANE SOCIETY OF THE UNITED
23 STATES VETERINARY MEDICAL ASSOCIATION ("HSUSVMA"), based on her part in
24 the seizure of Plaintiff's animals.

25     62.    At the time of the announcement of the tax court win, Plaintiff had been
26 unemployed for less than one month and was interviewing for work. Because she could no
27 longer afford to hire her occasional cleaning helper, Defendant James Foley, Defendant sent an
28 email to others to help him get more work. Defendant BATES was one of the people to whom

1  Plaintiff send Defendant FOLEY's contact information. Plaintiff is informed and believes that

2  Defendant FOLEY at that time began collaborating with Defendant BATES with the goal of

3  seizing Plaintiff's animals.

4       63.    As often happens in rescue and foster situations, Plaintiff's cats began showing

5  signs of a diarrhea problem which Plaintiff suspected was *giardiasis.* Plaintiff began treating

6  symptomatic cats for *giardiasis,* which cleared up in the affected animals. This is standard

7  procedure in rescue households.

8       64.    In approximately late summer or fall of 2011, Plaintiff noticed another diarrhea

9  problem, very different from typical *giardiasis,* which did not appear to respond to treatment.

10  Plaintiff was still unemployed, as the economy was very slow. Plaintiff had had almost no

11  income over the summer, as her employer had disputed her right to unemployment benefits.

12       65.    Plaintiff asked for and received help from colleagues. Veterinary examination

13  and testing was inconclusive, and Plaintiff continued treating cats identified with a diarrhea

14  problem. Several older, more vulnerable cats died as a result of this mysterious illness.

15  Plaintiff is informed and believes that other rescue households experienced an outbreak of an

16  unusual diarrhea at the same time as Plaintiff's household experienced this. Of course an

17  outbreak of any kind of diarrhea in an animal foster home makes cleanup far more difficult.

18       66.    Plaintiff, an attorney, had a case set for trial on October 24 that was expected to

19  take a week. On the Friday preceding trial, Plaintiff attempted to line up cleaning help for the

20  weekend and the following week. She contacted Defendant FOLEY, who agreed to clean the

21  next two days, Saturday and Sunday. Defendant FOLEY had cleaned for Plaintiff off and on

22  for several years and almost always was available and interested in earning extra money.

23       67.    Plaintiff continued preparing for trial, but Defendant FOLEY did not show up at

24  all on Saturday. Plaintiff finally was able to contact Defendant FOLEY and he assured her he

25  would be there the following day. He did not show up the next morning either.

26       68.    Defendant FOLEY had been Plaintiff's backup cleaning help for several years,

27  and had been called to fill in whenever another cleaner did not show up on a weekend. So

28  Defendant FOLEY knew that if he agreed to work the weekend and then did not show up,

1   Plaintiff would not be able to get replacement help. Defendant FOLEY knew that Plaintiff did
2   not have time to do the cleaning herself because she had told him she was preparing for trial.
3   Defendant FOLEY had helped to train other cleaners for Plaintiff, and he knew this was a time-
4   consuming process. Defendant FOLEY knew Plaintiff did not have time to train a replacement
5   cleaner.

6       69.     Plaintiff continued preparing for trial. Defendant FOLEY had never pulled a
7   "no show" before and Plaintiff thought he would arrive imminently. It was uncharacteristic of
8   Defendant FOLEY not to arrive fairly early in the day on a weekend without letting Plaintiff
9   know in advance.

10      70.     Defendants NGUYEN and another office from Defendant CITY OF
11  OAKLAND Police Department arrived and demanded to be allowed inside Plaintiff's home.
12  Plaintiff refused. One of the officers insisted that Plaintiff speak to Defendant WEBB on his
13  cell phone, and called her. While the officers were still at Plaintiff's home, Defendant FOLEY
14  rode up on his bicycle and entered Plaintiff's gate. The officers left and Plaintiff followed
15  Defendant FOLEY into the house, demanding to know why he was so late and why he had not
16  shown up the day before. The two exchanged words, and Defendant FOLEY pretended to
17  begin cleaning. Plaintiff went to another part of the house to take a shower.

18      71.     When Plaintiff returned after her shower, some 10-15 minutes later, Defendant
19  FOLEY was gone, all of the cat cages' doors were open, and most of the cages were empty.
20  Defendant FOLEY knew from experience that the cats in cages were very likely sick and
21  contagious. He also knew it would take hours and hours to catch the feral cats and return them
22  to their cages. Defendant FOLEY knew Plaintiff did not have time to do this, as she was
23  preparing for trial. Defendant FOLEY had done almost no cleaning and in fact had done
24  nothing constructive whatsoever. By his actions, Defendant FOLEY exponentially complicated
25  cleanup of Plaintiff's rescue household for the following week: the cats that had been let out
26  would spread *giardiasis* or another illness throughout the herd, and would also make cleanup
27  far more difficult.

28

13

1  72. Plaintiff telephoned other rescuers to help her for the following week, telling
2  them what Defendant FOLEY had done. A fellow rescuer agreed to help Plaintiff and began
3  arranging for others to help as well. Plaintiff cleaned enough litter boxes and food bows and
4  water buckets to get the cats through the following afternoon, and left. Her client had insisted
5  that she stay in an in-law apartment at his family's home to be nearer the courthouse during the
6  trial.

7  73. Plaintiff returned each day to check on her animals, and her fellow rescuer took
8  over cleaning, enlisting others to help as well. The trial and settlement conference lasted for
9  that entire week.

10  74. Plaintiff is informed and believes that Defendants FOLEY and BATES entered
11  her home after she left on Sunday night, without permission, for the purpose of taking two of
12  her cats to be euthanized (killed). Plaintiff is informed and believes that Defendant FOLEY
13  took photographs of the mess created by his failure to clean as he had been hired and had
14  agreed to do, and that these photographs were used to obtain a search warrant of Plaintiff's
15  home.

16  75. Plaintiff is informed and believes that neither Defendant BATES nor Defendant
17  FOLEY was ever charged with residential burglary.

18  76. Plaintiff is informed and believes that Defendant WEBB provided
19  misinformation to Defendant THOMAS, who interviewed Defendant FOLEY, and "guided"
20  the interview to subjects not raised or even alleged by Defendant FOLEY, and that Defendant
21  THOMAS himself essentially provided the allegations upon which the search warrant was
22  based.

23  77. Plaintiff is informed and believes that Defendant THOMAS has been involved
24  in wrongdoing while employed by the CITY OF OAKLAND and that the misrepresentations
25  on which the search warrant were based were completely in character for Defendant THOMAS.

26  78. Plaintiff is informed and believes that Defendant VALLADON wrote the search
27  warrant application, using notes from Defendant THOMAS, whose notes and memoranda
28  contained misinformation provided by Defendant WEBB.

14

1  79.  Plaintiff is informed and believes that the magistrate who signed the search

2  warrant would not have signed it if she had been aware of the actual facts, which were withheld

3  from her by Defendants WEBB, THOMAS, VALLADON, BATES, FOLEY and DOES 1-500.

4  80.  Plaintiff is informed and believes that Penal Code § 597.1 provides no authority

5  for removing animals from a residence when they are not in imminent danger. In this case,

6  Plaintiff's fellow rescuer and her crew were working at Plaintiff's house for two days before

7  the seizure and had returned on the day of the seizure to complete the cleanup necessitated by

8  Defendant FOLEY's no-show over the weekend and by Defendant FOLEY's actions in letting

9  animals out of their cages.

10  81.  Plaintiff is informed and believes that Defendants WEBB, THOMAS,

11  VALLADON, HOFFMAN, BABKA, NGUYEN, and DOES 1-500 who were Oakland police

12  officers either knew or should have known that they had no legal grounds to remove animals

13  from Plaintiff's residence.

14  82.  Plaintiff is informed and believes that Defendants BATES and FOLEY worked

15  with Defendant WEBB to "set up" Plaintiff so that Defendant WEBB could make good on her

16  ongoing threat (for more than a year) to get a search warrant.

17  83.  Plaintiff is informed and believes that the seizure on October 27, 2011, was the

18  culmination of 20 months of planning on the part of Defendant WEBB, who knew the entire

19  time that she had no legal basis for a seizure.

20  84.  Plaintiff is informed and believes that between March 2010 and October 27,

21  2011, Defendant WEBB consulted attorneys in the Oakland City Attorney's Office, including

22  Defendant ROCIO FIERO, and also repeatedly consulted Defendant KATHLEEN

23  FAMULENER, in the Office of the Alameda County District attorney, and that these attorneys

24  were aware of Defendant WEBB's plans and did nothing to stop her.

25  85.  Plaintiff is informed and believes that Defendant WEBB planned in advance to

26  euthanize (kill) almost all of Plaintiff's cats within two weeks after their seizure, just because

27  those cats were feral.

28

1       86.    Plaintiff is informed and believes that Defendants WEBB, ROBERTSON,

2  SARAH ANDRE ("ANDRE"), MAURICO SOTO ("SOTO"), JENNIFER WOOLF

3  ("WOOLF"), CARL SINGER ("SINGER"), and SHEA COX ("COX") administered virtually

4  no medical treatment to Plaintiff's cats beyond the vaccinations and deworming given to all

5  shelter animals on intake.

6       87.    Plaintiff is informed and believes that Defendant WEBB instructed Defendants

7  ANDRE, SOTO, WOOLF, SINGER, and COX that they could euthanize (kill) whichever cats

8  they wanted to euthanize, on intake, without doing testing or diagnostics, and without obtaining

9  a second opinion.

10       88.    Plaintiff is informed and believes that few if any records were kept regarding the

11  animals that were killed, and that no diagnostics were performed regarding the animals killed

12  during the first few days after their seizure.

13       89.    Plaintiff is informed and believes that Defendants DOE 1-500 malpracticed on

14  one of the kittens and caused liver failure, and that the kitten – healthy on intake – was later

15  killed as a result of Defendants' malpractice.

16       90.    Plaintiff is informed and believes that Defendant ROBERTS repeatedly

17  misdiagnosed another cat and then killed it because its "URI" (upper respiratory infection) did

18  not respond to antibiotics. This cat had a rather obvious an autoimmune condition that Plaintiff

19  is informed and believes no reasonably competent veterinarian would mistake for a URI.

20       91.    Plaintiff is informed and believes that the City Attorney's Office for the CITY

21  OF OAKLAND improperly "intervened" in the criminal case against Plaintiff to request

22  immediate custody of the cats – evidence which was legally required to be preserved until

23  Plaintiff was either convicted or acquitted – because Defendants WEBB and her co-defendants

24  at Oakland Animal Services had killed so many cats in the first few days after the seizure

25  without documenting anything. Plaintiff is informed and believes the City Attorney's motion s

26  were filed to try to cover up wrongdoing by Defendant CITY OF OAKLAND Animal Services.

27  <center>FIRST CAUSE OF ACTION<br>(42 U.S.C. § 1983)</center>

28  <center>(AGAINST DEFENDANTS _____)</center>

<center>16</center>

92.     Plaintiff incorporates by reference and re-alleges herein Paragraphs 1 through ___.

93.     In doing the acts complained of herein, Defendants _____ AND/OR does 1-500, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiff of certain constitutionally protected rights, including but not limited to:

    a.     The right to be free from excessive and unnecessary police use of force;

    b.     The right not to be deprived of property without Due Process of Law;

    c.     The right to be free from unreasonable search or seizure; and/or

    d.     The right to be free from pre-trial punishment.

94.     Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

95.     WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983)
### (AGAINST DEFENDANT CITY OF OAKLAND)

96.     Plaintiff incorporates by reference and re-alleges herein Paragraphs 1 through ___.

97.     As against Defendant CITY OF OAKLAND, the Plaintiff further alleges that the acts and/or omissions alleged in the Complaint herein are indicative and representative of a repeated course of conduct by members of the City of Oakland Police Department tantamount to a custom, policy or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of citizens.

98.     Plaintiff is further informed and believes and thereon alleges that the acts alleged herein are the direct and proximate result of the deliberate indifference of Defendant CITY OF OAKLAND to repeated acts of police misconduct by the CITY OF OAKLAND and its high ranking police department officials.

99.     The injuries to the Plaintiff were the foreseeable and proximate result of said customs, policies, patterns and/or practices of Defendant CITY OF OAKLAND.

1    100.    Plaintiff is further informed and believes and thereon alleges that the damages

2    she sustained as alleged herein were the direct and proximate result of municipal customs

3    and/or policies of deliberate indifference in the training, supervision and/or discipline of

4    members of the CITY OF OAKLAND Police Department.

5    101.    Plaintiff is further informed and believes and upon such information and belief

6    alleges that her damages and injuries were caused by customs, policies, patterns or practices of

7    the CITY OF OAKLAND of deliberate indifference in the training, supervision and/or

8    discipline of Oakland Animal Services personnel, including but not limited to Defendants

9    WEBB, ARREOLA, ROBERTSON, SINGER, SOTO, _____, STRONG and/or DOES 1-

10   500, and/or each of them.

11   102.    The aforementioned customs, policies or practices of Defendant CITY OF

12   OAKLAND resulted in the deprivation of Plaintiff's constitutional rights including, but not

13   limited to, the following:

14   103.    Said rights are substantive guarantees under the Fourth and/or Fourteenth

15   Amendments to the United States Constitution.

16   WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

17                              THIRD CAUSE OF ACTION
                                    (42 U.S.C. § 1983)
18                    (AGAINST DEFENDANTS _____ and DOES 1-500)

19   104.    Plaintiff incorporates by reference and re-alleges herein Paragraphs 1 through

20   ___.

21   105.    Plaintiff is informed and believes and thereon alleges that high ranking City of

22       Oakland officials, including high ranking police supervisors, such as Defendants

23       _____, HOWARD JORDAN, and/or Does 1-500, knew and/or reasonably should

24       have known about the repeated acts of misconduct by Oakland Police officers,

25       including, but not limited to, repeated acts of misconduct by Defendants THOMAS,

26       VALLADON, NGUYEN, WEBB, ARREOLA, STRONG, _____, DOES 1-500,

27       and/or each of them.

28

18

106.    Despite having such notice, Plaintiff is informed and believes and thereon alleges that Defendants _____, JORDAN and/or DOES 1-500, and/or each of them, approved, ratified, condoned, encouraged and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by said officers and personnel.

107.    Plaintiff is further informed and believes and thereon alleges that at the time of the subject incident, Defendant _____, JORDAN supervised OAS, and specifically approved and ratified the false police report that was filed against the Plaintiff which resulted in the filing of false criminal charges against the Plaintiff and the violation of her constitutional rights as alleged herein.

108.    Plaintiff is further informed and believes and thereon alleges that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by THOMAS, VALLADON and NGUYEN and other City of Oakland police officers, including the individual defendants herein, by Defendants JORDAN, _____ and/or DOES 1-500, said officers were encouraged to continue their course of misconduct and violated the Plaintiff's rights as alleged in this Complaint.

109.    The aforementioned acts and/or omissions and/or deliberate indifference by high-ranking City of Oakland officials, including Defendants JORDAN, _____, and/or DOES 1-500, and each of them, resulted in the deprivation of Plaintiff's constitutional rights, including, but not limited to, the following:

    a.    The right not to be deprived of property without Due Process of Law;

    b.    The right to be free from unreasonable searches and/or seizures; and/or

    c.    The right to be free from pre-trial punishment.

110.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

1

## PENDENT STATE CAUSES OF ACTION

2

### FOURTH CAUSE OF ACTION
3
(California Civil Code § 52.1)
(AGAINST DEFENDANTS CITY OF OAKLAND,
4
COUNTY OF ALAMEDA, _____ and DOES 1-500)

5    111.    Plaintiff realleges by reference and incorporates herein Paragraphs 1 through __.

6    112.    Defendants interfered or attempted to interfere by threats, intimidation, or

7    coercion with the Plaintiff's exercise or enjoyment of rights secured by the

8    Constitution and/or laws of the United States and/or California, including but not

9    limited to:

10        d.    The right to be free from excessive and unnecessary police use of force;

11        e.    The right not to be deprived of property without Due Process of Law;

12        f.    The right to be free from unreasonable search or seizure;

13        g.    The right to be free from pre-trial punishment;

14        h.    The right to be free from discrimination based on race and/or gender; and/or

15        i.    The right to Equal Protection of the Law.

16    113.    The acts and omissions of the Defendants described herein caused Plaintiff to

17    suffer injury and damage.

18    114.    As a result of the acts and omissions of the Defendants described herein,

19    Plaintiff is also entitled to relief under California Civil Code §§ 52 and 52.1.

20    115.    Said acts and/or omissions occurred in the course and scope of Defendants'

21    employment. Defendant City of Oakland is liable for its employees' acts and or

22    omissions pursuant to California Government Code § 815.2 under the doctrine of

23    *respondeat superior.*

24    116.    Plaintiff is entitled to an award of her reasonable attorneys' fees pursuant to

25    Civil Code §§ 52 and 52.1.

26    WHEREFORE, Plaintiff prays for relief as set forth herein.

27

28

FIFTH CAUSE OF ACTION
(California Civil Code § 51.7)
(AGAINST DEFENDANTS CITY OF OAKLAND,
COUNTY OF ALAMEDA, _____ and DOES 1-500)

117. Plaintiff incorporates by reference and re-alleges herein Paragraphs 1 through __.

118. Plaintiff is informed and believes and thereon alleges that the acts and/or omissions of Defendants, and each of them, as alleged herein, were committed on account of the Plaintiff's gender and age.

119. As a result of the acts and/or omissions of Defendants, Plaintiff suffered the violation of her rights as guaranteed by California Civil Code § 51.7 to be free from violence committed against her property because of her gender, and is entitled to relief under California Civil Code §§ 52 and 52.1.

120. Said acts and/or omissions occurred in the course and scope of Defendants' employment. Defendant City of Oakland is liable for its employees' acts and/or omissions pursuant to California Government Code § 815.2 under the doctrine of *respondeat superior.*

121. Said acts and/or omissions occurred in the course and scope of Defendants' employment. Defendant County of Alameda is liable for its employees' acts and/or omissions pursuant to California Government Code § 815.2 under the doctrine of *respondeat superior.*

122. Said acts and/or omissions occurred in the course and scope of Defendants' employment. Defendant East Bay SPCA is liable for its employees' acts and/or omissions under the doctrine of *respondeat superior.*

123. Plaintiff is entitled to an award of her reasonable attorneys' fees pursuant to Civil Code §§ 52 and 52.1.

124. Plaintiff is also entitled to statutory damages pursuant to Civil Code §§ 52 and 52.1.

WHEREFORE, Plaintiff prays for relief as set forth herein.

1

**SIXTH CAUSE OF ACTION**
(Illegal Seizure Penal Code § 597.1)
(AGAINST DEFENDANTS CITY OF OAKLAND,
COUNTY OF ALAMEDA, _____ and DOES 1-500)

125.   Plaintiff incorporates by reference and realleges herein Paragraphs 1 through

___.

126.   Defendants and/or each of them caused Plaintiff's residence to be searched and

property to be seized in violation of Penal Code § 597.1, under the authority of which

they purported to act.

WHEREFORE, Plaintiff prays for relief as set forth herein.

**SEVENTH CAUSE OF ACTION**
(Negligent Supervision)
(AGAINST DEFENDANTS CITY OF OAKLAND,
COUNTY OF ALAMEDA, _____ and DOES 1-500)

127.   Plaintiff incorporates by reference and realleges herein Paragraphs 1 through

___.

128.   Defendants JORDAN, JOYNER, WEBB, WHITMEYER, and the CITY OF

OAKLAND owed Plaintiff a duty to use due care in the hiring, supervision, and

training of City of Oakland police and animal control officers at the time of the

incidents alleged in this Complaint.

129.   Defendants PARKER and the CITY OF OAKLAND owed Plaintiff a duty to

use due care in the hiring, supervision, and training of City of Oakland attorneys at

the time of the incidents alleged in this Complaint.

130.   Said defendants had a duty to ensure that their police officers were adequately

trained and supervised to ensure that City of Oakland police officers did not engage

in the type of misconduct and/or acts and /or omissions as are alleged in this

Complaint.

131.   Sale Defendants also had a duty to ensure that their police officers were

adequately trained and supervised in obtaining search warrants to ensure that their

police officers did not coach and misquote alleged informants in order to obtain

search warrants by misstating, concealing and omitting evidence against citizens, including the Plaintiff, as alleged in this Complaint.

132.    Plaintiff is informed and believes and thereon alleges that said Defendants negligently breached their duty to use due care in the hiring, supervision, training and/or discipline of City of Oakland police and animal control officers as alleged herein, including but not limited to Defendants THOMAS, VALLADON, JOYNER, NGUYEN, BABKA, WEBB, ARREOLA, PAN, AYALA, PERGRA, STRONG, LEWIS, WHITMEYER, and DOES 1-500.

133.    As a result of the negligence of the CITY OF OAKLAND, Defendants JORDAN, JOYNER, WEBB, WHITMEYER, and DOES 1-500, and/or each of them, in the hiring, supervision, training and/or discipline of City of Oakland police and animal control officers, including but not limited to the individual police officer and animal control personnel defendants herein, DOES 1-500, and/or each of them, Plaintiff suffered the injuries and damages as alleged in this Complaint.

WHEREFORE, Plaintiff prays for relief as set forth herein.

## EIGHTH CAUSE OF ACTION
(Negligence)
(AGAINST DEFENDANTS CITY OF OAKLAND,
COUNTY OF ALAMEDA, _____ and DOES 1-500)

134.    Plaintiff incorporates by reference and realleges herein Paragraphs 1 through ___.

135.    Defendants THOMAS, VALLADON, JOYNER, NGUYEN, BABKA, WEBB, ARREOLA, PAN, AYALA, PERGRA, STRONG, LEWIS, WHITMEYER, and DOES 1-500 and/or each of them owed Plaintiff a duty to use due care at the time of the incidents alleged herein, to avoid foreseeable injury and/or damage to the Plaintiff.

136.    In doing the aforementioned acts and/or omissions, said Defendants, and each of them, negligently breached said duty to use due care, resulting in the injuries and damages to the Plaintiff as alleged herein.

137.     Defendant CITY OF OAKLAND is liable pursuant to California Government Code § 815.2 under the doctrine of *respondeat superior* for the negligence of its agents and employees for their acts and omissions within the course and scope of their employment as alleged herein.

WHEREFORE, Plaintiff prays for relief as set forth herein.

## STATEMENT OF DAMAGES

108.     Plaintiff incorporates by reference and realleges herein Paragraphs 1 through ___.

109.     As a result of the acts and/or omissions of Defendants, and each of them, as alleged herein, Plaintiff suffered all and/or some of the damages listed below:

   a. General damages, including, but not limited to, past, present and future damages for pain, suffering, emotional distress, and pretrial loss of the right to own animals in amounts to be determined according to proof;

   b. Past, present and/or future damages for income loss and damage to career in amounts to be determined according to proof;

   c. Past, present and/or future damages for attorneys' fees, court costs, motion and trial-related expenses not paid by Alameda County, and/or other costs incurred in connection with the underlying illegal search and seizure and/or the defense against false criminal charges filed as a result of the acts and/or omissions of Defendants and/or each of them.

   d. Statutory and other damages as allowed pursuant to California Civil Code §§ 51.7, 52 and/or 52.1.

110.     The acts and/or omissions of Defendants _____ and/or each of them, were intentional, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of the Plaintiff. Accordingly, Plaintiff prays for an award of punitive and exemplary damages in amounts to be determined according to proof.

1   111. Plaintiff will also be entitled to an award of her attorneys' fees and costs

2 pursuant to statute(s) in the event that she is the prevailing party in this action under 42 U.S.C.

3 §§ 1983, 1988 and/or under other statutes and/or laws.

4         JURY TRIAL DEMAND

5   Plaintiff hereby demands a jury trial.

6     COMPLIANCE WITH CALIFORNIA TORT CLAIMS STATUTE

7   Plaintiff timely filed a tort claim with the City of Oakland pursuant to California

8 Government Code §§ 810, *et seq.,* thereby preserving her claims. Plaintiff's claim was

9 rejected, but she had already filed a lawsuit against the City of Oakland, which she

10 subsequently dismissed *without prejudice* due to the need to defend the criminal case.

11          PRAYER

12   WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as

13 follows:

14   1. General damages to be determined according to proof;

15   2. Special damages, including but not limited to wage loss and/or damage to

16 career; attorneys' fees, court costs and/or other out-of-pocket expenses in connection with the

17 underlying criminal charges and/or illegal search and seizure as alleged herein;

18   3. Statutory and/or other damages pursuant to California Civil Code §§ 51.7, 52

19 and/or 52.1;

20   4. Attorneys' fees pursuant to statutes;

21   5. Costs of suit;

22   6. Punitive and exemplary damages in amounts to be determined according to

23 proof as to the individual defendants;

24   7. Prejudgment interest as permitted by law;

25   8. Such other and further relief as the Court may deem just and proper.

26

27 Dated: October 27, 2013

28            Jan Van Dusen, Plaintiff in pro per